WARREN GRAY, Jr., PLAINTIFF, v. NATHAN CHOLODENKO, IRVING L. HODES, DEUEL RICE AND WARREN GRAY, Sr., JOINTLY, SEVERALLY AND INDIVIDUALLY, DEFENDANTS.

Essex County Court
Probate Division

Decided September 15, 1955.

*Mr. Robert S. Hartgrove,* attorney for plaintiff.

*Mr. Fredrick J. Waltzinger,* attorney for defendants.

WAUGH, J. C. C. (orally). Warren Gray, Jr., filed a complaint in the Superior Court, Chancery Division. His action is best described by quoting from the opinion of Judge Clapp in the Appellate Division, which opinion is reported in 34 *N. J. Super.* 190, in which he says:

"By his complaint plaintiff sought redress of various sorts, including (in effect) relief from a decree of 1947, and a judgment of 1949, of the Essex County Surrogate's Court; the first probating his grandmother's will; and the second probating his mother's will. Plaintiff has no case unless relief is given from at least one of these probates."

On appeal this judgment was reversed and remanded to this court for trial on the issues of (1) fraud upon the court with respect to the probate of either the will of Elizabeth Gray or Louisa Smith; (2) if there was a fraud practiced upon the court with respect to the probate of either of the wills, did the plaintiff, Warren Gray, Jr., use due diligence in bringing this action?

This court has allowed the widest latitude possible in the examination and cross-examination of all witnesses and

parties to this action, since the complaint contains charges of fraud upon this court by two officers of the court.

█ It is the settled law of our State that attorneys owe the highest standard of duty and conduct to both the public and the courts. That was set forth in the case of *In re Stein*, reported in 1 *N. J.* 228, at *page* 237 (1949), in which the Supreme Court, speaking *per curiam*, stated:

"The courts and the public are entitled to the highest standard of conduct on the part of the members of the bar."

█ This court has considered all the testimony and exhibits offered in evidence and makes the following findings of fact:

1. The will of Louisa Smith was properly executed by her on November 22, 1947 at 95 Oakwood Avenue, Orange, New Jersey, in the presence of Mr. Nathan Cholodenko and Mr. Irving Hodes. The X-mark made on that will was made by Louisa Smith in her own hand. At the time of the execution of the will Reverend Deuel Rice was present in the room.

2. The will of Elizabeth Gray was properly executed by her on February 3, 1948 at her residence, 219 Harrison Avenue, Montclair, New Jersey, in the presence of Mr. Nathan Cholodenko and Mr. Irving Hodes. Mr. Warren Gray, her husband, was in and about the premises at the time of the execution of the aforesaid will. The entire signature Elizabeth Gray appearing on pages 1 and 2 of Exhibit P–9 were affixed by her in her own hand.

3. It follows that, since each will was properly executed, the admission to probate of each of these wills was not a fraud upon this court.

The court's findings of fact were made for the following reasons:

Reverend Rice was a straightforward witness. I believe he was present at the execution of Mrs. Smith's will on November 22, 1947. I believe him when he says that Mr. Cholodenko and Mr. Hodes were present.

The court also believes Mr. Cholodenko and was especially impressed by the bearing of Mr. Hodes on the witness stand

and by his candor. His display of forthrightness and calm in the face of serious charges could not have been simulated in the opinion of this court. Both Mr. Cholodenko and Mr. Hodes met and sustained the high standard of conduct required of them under our settled law.

The testimony of Mr. Warren Gray, Jr., on the other hand became weak and confusing on several very vital points. He fixed the date of a conversation with his father about the necessity of a change in his grandmother's will, as of a time after his grandmother's death. After a recess he stated that his father's mental condition was so poor that his father spoke of the grandmother being alive even after her death. The court has no doubt whatever that the conversation took place between the plaintiff and his father before Louisa Smith's death and at a time when there was cause for the plaintiff, his father, and Louisa Smith being concerned with a transfer of certain property to the Myatts and by them to the Town of Montclair. There is absolutely no evidence to substantiate plaintiff's tale about a gift to a godchild, the child of the Myatts.

Warren Gray, Jr., gave no explanation satisfactory to this court as to why he did not retain Mr. Curtis or Mr. Fielo, or even why he did not insist upon action by Mr. Speni. He does not support his contention about seeing these attorneys with the testimony of any of the attorneys or friends he consulted. Mr. Gray, Jr., is an intelligent and well-educated person.

Besides this Mr. Gray allowed his present counsel to contend at pretrial:

"The plaintiff admits that he knew about the existence of the will of Elizabeth Gray on or about October 29, 1949, but that it was not until after July 1954, that he ascertained that Elizabeth Gray had not executed her will, he first having gathered this information on or about the 15th day of July 1954."

On May 20, 1955 he made an affidavit in this cause in which he stated:

"3. I never saw the alleged original will and received no notice in respect to the probate of the same.

4. I am familiar with the handwriting of my said deceased mother. After the above suit had been instituted and because of information which I had received, I examined a photostatic copy of the said alleged will as to the alleged signature of my deceased mother in execution thereof."

The affidavit goes on to draw certain inferences. Yet at the trial of this issue he admitted that he knew his mother had not signed her last name to her will shortly after her death.

The testimony of Mrs. Whidby and her daughter, Mrs. Gregory, is somewhat more difficult to reconcile. Each made the appearance of an honest and straightforward witness. I have come to the conclusion, however, that the ladies did not keep as careful a watch upon their dates or who came to the rest home as they thought they did. There were many patients and but few in help to care for them. Obviously they were not as attentive to these activities as they testified. Essentially they strike the court as being people who, having taken sides, stick to it steadfastly but not in a convincing manner. Their testimony as to the physical condition of Mrs. Smith was not borne out by Dr. Thompson, Sr., and the court noted he was the best qualified witness on that point. The testimony of these two ladies also is weakened by the failure of Mrs. Whidby to find the nursing book which presumably could have given a day-to-day log of Mrs. Smith's condition and perhaps visitors.

The testimony of Mrs. Haithcox was not helpful to the court on the crucial points involved in the case.

The court was much more favorably impressed with the testimony of Mr. Haring than it was with that of Mr. Pelletreau, as is indicated by my findings as to the signatures of these wills. Mr. Pelletreau, of course, agrees that the X-marks on Exhibits P–15, P–7, P–4, and P–16 were all made by the same hand. The court finds that on P–7, the will, the X-mark was made by Mrs. Smith. It follows logically that all the other marks were made by her as testified to by Mr. Hodes, Reverend Rice, and Mr. Cholodenko.

 Since I find no fraud, the question of due diligence is moot. However, so that there may be a complete finding as directed by the Appellate Division, the court finds that the plaintiff has not used due diligence in calling the alleged fraud to the attention of the court.

One fact appeared and was made plain at the trial which in the opinion of the Appellate Division was an unknown fact, because the Appellate Division opinion states, 34 *N. J. Super.*, at *page* 195, "There is nothing in the affidavits to show when the plaintiff first discovered or might reasonably have discovered the alleged fraud on the court," and it appears from the hearing in this case that he discovered both alleged frauds very shortly after his own mother's death at the latest. Mr. Gray failed by a wide margin to prove due diligence or a justification for a failure to employ that diligence. Between the discovery of fraud with respect to his mother's will (she being the later of the two, his grandmother and his mother) and the employment of his present attorney, at least 4½ years elapsed. He consulted several attorneys, and at least one able counsel was willing to accept his case, albeit he was not enthusiastic about the outcome. One counsel was retained but did not, according to plaintiff's testimony, use due diligence.

The court finds these definitions of due diligence to be helpful in reaching a conclusion, and finds that the plaintiff is bound by this as much as was the attorney he hired, quoting from *William v. Knox*, 10 *N. J. Super.* 384, at *page* 390 (*App. Div.* 1950), in which the court states: "The diligence required of an attorney is such as a man of ordinary prudence gives to his own important business." In that case they said that, "No ordinarily prudent or reasonable man would have ignored the case against him from January 4, 1949 until August 7, 1950." In the present case an intelligent plaintiff and presumably, if the court believes the testimony of the plaintiff as to the attorney he hired, an intelligent attorney allowed an important matter of fraud to go without calling it to the attention of the court for a long period of time. This definition of diligence is followed

in *Schulwitz v. Shuster*, 27 *N. J. Super.* 554 (*App. Div.* 1953).

Plaintiff did not use due diligence in presenting the alleged fraud to the court.

The court finds that the defendants are not estopped from denying fraud by judgment in the appeal of Cornell Smith to the probate of the will of Louisa Smith.

Judgment is entered for the defendants on the issues tried in accordance with the pretrial order.

It follows, as was stated by the Appellate Division, that the plaintiff has no case unless relief is given from at least one of these probates. It also follows that as to the balance of the complaint, other than the issues tried for which I have given judgment for the defendants, there must be a dismissal with prejudice.

I reserve the right to edit and add to these findings by written opinion in the event of an appeal.